# 17-296

## In the
## United States Court of Appeals
## For the Second Circuit



EDWARD G. MCDONOUGH,

*Plaintiff-Appellant,*

v.

YOUEL SMITH, individually and as Special District Attorney for
The County of Rensselaer, New York, aka TREY SMITH,

*Defendant-Appellee,*

RICHARD MCNALLY JR., KEVIN MCGRATH, ALAN ROBILLARD,
COUNTY OF RENSSELAER, JOHN F. BROWN, WILLIAM A. MCINERNEY,
JOHN J. OGDEN, KEVIN F. O'MALLEY, DANIEL B. BROWN
and ANTHONY J. RENNA,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

PREMO LAW FIRM PLLC
*Attorneys for Plaintiff-Appellant*
20 Corporate Woods Boulevard
Albany, New York 12211
(518) 436-8000

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................iii

PRELIMINARY STATEMENT ....................................................1

JURISDICTIONAL STATEMENT ................................................1

STATEMENT OF ISSUE FOR REVIEW .......................................3

STATEMENT OF THE CASE ......................................................4

    A.    The Nature of the Case.........................................................4

    B.    The Course of Proceedings and Disposition Below..........................5

STATEMENT OF FACTS ...........................................................6

    A.    Complaint § 1983 Due Process and Malicious Prosecution Claims...6

    B.    Fed. R. Civ. P 12(b)(6) Motions........................................11

        1.    § 1983 Due Process Fabrication of Evidence Claim…………11

        2.    § 1983 Malicious Prosecution Claim…………………………12

    C.    The District Court's Decisions.........................................13

        1.    Due Process Fabrication of Evidence Claim…………………13

        2.    Malicious Prosecution Claim………………………………13

SUMMARY OF THE ARGUMENT ...............................................15

STANDARD OF REVIEW ..........................................................19

ARGUMENT ...........................................................................19

i

I.    The District Court Erred by Relying on the Standard Rule for Accrual as Applied to Fabrication of Evidence or Other Fair Trial Claims Not Analogous to Malicious Prosecution and Dismissing Plaintiff's Malicious Prosecution Analogous Due Process Claim as Time-barred…………………19

      A.    District Court Erroneously Considered All Fabrication of Evidence Claims as Generic Cause of Action for Accrual Purposes…………..20

      B.    District Court Rejected Assertion that Plaintiff's Due Process Claim is Akin to Malicious Prosecution……………………………………24

      C.    District Court Erred in Relying on Cases in Which Standard Accrual Rule was Applied to Fabrication of Evidence and Other Fair Trial Claims Not Akin to Malicious Prosecution…………………………25

      D.    District Court Erred in Failing to Look to Most Analogous Common Law Tort and Its Accrual Rules to Determine When Statute of Limitations Began on McDonough's Due Process Claim…………..33

      E.    Accrual of § 1983 Claim Determined by Analogous Common Law..36

      F.    Due Promise Claim Based on Fabrication of Evidence to Pursue Wrongful Prosecution is Akin to Malicious Prosecution……………38

      G.    McDonough's Fabrication of Evidence Claim Accrued on Acquittal and was Timely Commenced……………...………………………...41

      H.    Due Process Wrongful Prosecution Is a Continuing Violation……...50

II.   District Court Erred by Failing to Accept Allegations that Smith Did Not Have Absolute Immunity Because He was Unlawfully Appointed and Prosecuted McDonough for Acts Not Crimes Under State Law…………...51

CONCLUSION.................................................................................................53

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Acha v. Beame*,
570 F. 2d 57 (2d Cir. 1978)……………….………………………………………1

*Amaker v. Weiner*,
179 F.3d 48 (2d Cir. 1999)………………………………………...24, 29

*Awabdy v. City of Adelanto,*
368 F.3d 1062 (9th Cir.2004)……………………………………………….…44

*Bailey v. City of New York,*
79 F. Supp.3d 424 (E.D.N.Y. 2015)…...…………11, 13, 21, 22, 24, 29, 31, 32, 41

*Barbara v. Smith,*
836 F.2d 96 (2d Cir. 1987)…………………………………….……10

*Barr v. Abrams*,
810 F.2d 358 (2d Circ. 1987)……………………………………………….10

*Boley v. Durets,*
No. 12-cv-4090, 2013 WL 6562445 (E.D.N.Y. Dec. 10, 2013)…...…………….41

*Boyd v. City of New York,*
336 F.3d 72 (2d Cir. 2003)…………………………………………………40

*Bradford v. Scherschligt,*
803 F.3d 382 (9th Cir. 2015)…………………..24, 29, 36, 37, 40, 43, 44, 46, 47

*Britt v. Legal Aid Society, Inc.*,
95 N.Y.2d 443 (2000)……………………………...……………………..49

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009)………………………………………………42, 47

*Broughton v. State of New York*,
37 N.Y.2d 451 (1975)…………..…………………………………...………....51

*Carey v. Piphus,*
    435 U.S. 247 (1978)……………………………………………...33, 34, 35

*Castellano v. Fragozo*,
    352 F.3d 939 (5th Cir.2003)……………………………………………...42

*Cleary v. County of Macomb*,
    No. 06-cv-15505, 2007 WL 2669102 (E.D. Mich. Sep. 6, 2007)…….……….22

*Devbrow v. Kalu,*
    705 F.3d 765 (7th Cir. 2013)………………………………………..........36

*Devereaux v. Abbey,*
    263 F.3d 1070 (9th Cir.2001) (en banc)………….…………………………..24, 43

*DiBlasio v. City of New York*,
    102 F.3d 654 (2d Cir. 1996)………………………………………………….5

*Doswell v. City of Pittsburgh*,
    No. 07-cv-761, 2007 WL 2907886 (W.D. Pa. Oct. 2, 2007)…………...…40, 47

*Donaldson v. O'Connor*,
    493 F.2d 507 (5th Cir. 1974), vac. other grds., 422 U.S. 563 (1975)………….51

*Douglas v. City of New York*,
    595 F. Supp.2d 333 (S.D.N.Y. 2009)………………………….……………39

*Eagleston v. Guido,*
    41 F.3d 865 (2d Cir. 1994)……………………………………………………11

*Exxon Mobile Corp. v. Saudi Basic Industries Corp.*,
    544 U.S. 280 (2005)………………………………………………………...14

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006)…..……………………………………………52

*Federated Department Stores, Inc. v. Moitie*,
    452 US 394 (1981)……………………………………………...…………..1

iv

*Friedl v. City of New York*,
   210 F.3d 79 (2d Cir. 2000)……..…………………………….……………..52

*Garnett v. Undercover Officer C0039*,
   838 F3d. 265 (2d Cir. 2016)…………………………………………...…23

*Ginett v. Computer Task Group, Inc.*,
   962 F.2d 1085 (2d Cir. 1992)…………........................................................1

*Gillespie v. United States Steel Corp.*,
   379 U.S. 148 (1964)………………………………………………….……1

*Halsey v. Pfeiffer*,
   750 F.3d 273 (3d Cir. 2014)…………………………………………………40, 47

*Heck v. Humphrey*,
   512 U.S. 477 (1994)…………………………………20, 22, 28, 30, 32-35, 38, 46, 50

*Jasper v. Fourth Court of Appeals*,
   No. 08-cv-7472, 2009 WL 1383529 (S.D.N.Y. May 18, 2009)…………22, 29

*Johnson v. Dossey*,
   515 F.3d 778 (7th Cir. 2008)……………………………………...………23, 44, 47

*Jovanovic v. City of New York,*
   No. 04-cv-8437, 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006), *mot. For reconsideration granted in part on other grounds,* 2008 WL 355515 (S.D.N.Y. Feb. 07, 2008)……………………………………………………...………22, 29

*Karedes v. Ackerley Group, Inc.*,
   423 F.3d 107 (2d Cir. 2005) …........................................................................19

*Keller v. Sobolewski*,
   No. 10-cv-5198, 2012 WL 4863228 (E.D.N.Y. Oct. 12, 2012)……….13, 21, 28

*Lambert v. Blackwell*,
   387 F.3d 210 (3d Cir. 2004)……………………………………...……....47

*Leonard F. v. Israel Discount Bank of New York*,
199 F.3d 99 (2d Cir. 1999)……..………………………………..……..52

*Limone v. Condon*,
372 F.3d 39 (1st Cir. 2004)……………………………………….…...52

*Mack v. Varelas,*
835 F.2d 995 (2d Cir. 1987)………………………………………….23, 27

*Manganiello v. City of New York,*
612 F.3d 149 (2d Cir. 2010)……………………………..………….....5, 19, 41

*Mitchell v. Home*,
77 F. Supp.2d 361 (S.D.N.Y. 2005)…………11, 12, 13, 20, 23, 25, 26, 31

*Mondragon v. Thompson*,
519 F.3d 1078 (10th Cir. 2008)…………………………….....24, 29, 39, 44-46

*Murphy v. Lynn,*
118 F.3d 938 (2d Cir.1997)……………………….……………………..26

*Newsome v. McCabe,*
256 F.3d 747 (7th Cir.2001)…………………………………………...42

*Nnodimele v. Derienzo*,
No. 13-cv-3461, 2016 WL 3661273 (E.D.N.Y. July 5, 2016)….…23, 29, 46, 47

*Owens v. Okure,*
488 U.S. 235 (1989)……………………………………………………11, 34

*Owens v. Baltimore City State's Attorneys Office*,
767 F.3d 379 (4th Cir.2014), *cert. den.,* 135 S.Ct. …....24, 36, 37, 42, 44, 47, 48

*Paige v. Police Department of The City of Schenectady,*
264 F.3d 197 (2d Cir. 2001)……………………………………..…….34

*Perez v. Cuomo*,
No. 09-cv-1109, 2009 WL 1046137 (E.D.N.Y. Apr. 20, 2009)……...……22, 34

*Pierce v. Gilchrist*,
359 F.3d 1279 (10th Cir. 2004)…………………………………....24, 36, 42, 45

*Pollis v. New School for Social Research*,
132 F. 3d 115 (2d Cir. 1997)…………………....……………………...51

*Poventud v. City of New York*,
750 F. 3d 121 (2d Cir. 2014)…………….....……………………………23, 29, 33

*Renda v. King*,
347 F.3d 550 (3d Cir. 2003)……………………………………..………47

*Ricciuti v. New York City Transit Auth.*,
124 F.3d 123 (2d Cir.1997)………………....……………13, 21, 26, 28, 30, 39

*Schloss v. Bouse*,
876 F.2d 287 (2d Cir. 1989)…………………………………..………….10

*Selevan v. New York Thruway Authority*,
584 F.3d 82 (2d Cir. 2009)…...……………………...……………………51

*Simmons v. Beard*,
590 F.3d 223 (3d Cir. 2009)……………………………………….....…47

*Singleton v. New York,*
632 F.2d 185 (2d Cir. 1980)…………………………………………...27

*Spalding v. Vilas*,
161 U.S. 483 (1896)………………………….…………………....…10

*Stemler v. City of Florence*,
126 F.3d 856 (6th Cir. 1997)…………………….…………………………40

*Stump v. Sparkman*,
435 U.S. 349 (1978)…………………………………………………...10

*Sweet v. Sheahan*,
235 F.3d 80 (2d Cir. 2000)…………………………………………………19

vii

*United States v. Ruiz,*
    536 U.S. 622 (2002)……………………………………………………...32

*Varnell v. Dora Consol. School District*,
    756 F.3d 1208 (10th Cir. 2014)…………………………………………..36

*Veal v. Geraci*,
    23 F.3d 722 (2d Cir.1994)……………………………….…11, 13, 20, 23, 25-27

*Walker v. Jastremski*,
    159 F.3d 117 (2d Cir. 1998)……………………….…………………24, 44

*Wallace v. Kato*,
    549 U.S. 384 (2007)………………………12, 22, 23, 28, 30, 34-38, 43, 45, 50

*Woods v. Candela,*
    13 F.3d 574 (2d Cir. 1994)……………….....…………………………23, 27

*Working Families Party v. Fisher*,
    23 N.Y.3d 539 (2014)……………………………………………………14

*Wright v. City of Philadelphia*,
    No. 16-cv-5020, 2017 WL 167970 (E.D. Penn. Jan. 17, 2017)………….. 47, 48

*Zahrey v. Coffey,*
    221 F.3d 342 (2d Cir. 2000)……………………………….5, 10, 24, 39, 40

## **STATUTES**

28 U.S.C. § 1291................................................................................1

28 U.S.C. § 1331................................................................................1

42 U.S.C. § 1983................................................................................1

## PRELIMINARY STATEMENT

Plaintiff-Appellant Edward McDonough ("McDonough") appeals from the Memorandum-Decisions and Orders of the United States District Court, Northern District of New York (D'Agostino, J) dated and entered September 30, 2016, and December 30, 2016, dismissing under Fed. R. Civ. P. 12(b)(6) the asserted § 1983 due process fabrication of evidence and malicious prosecution claims against defendant Youel C. Smith, III ("Smith" or "special prosecutor"). (A-131, A-182)[1]

## JURISDICTIONAL STATEMENT

The court below had jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. See, also *Acha v. Beame*, 570 F. 2d 57, 62 (2d Cir. 1978); *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1091-92 (2d Cir. 1992) (order disposing of a claim is final if it ends the litigation and leaves nothing for the court to do but execute judgment); *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152-153 (1964) (final orders should be reviewed if the question presented is fundamental to further conduct of the case, especially if delay will cause a great injustice).

The District Court's rulings constitute final orders disposing of all issues regarding Smith. See, *Federated Department Stores, Inc. v. Moitie*, 452 US 394, 399 n.3 (1981) (Rule 12(b)(6) dismissal is a judgment on the merits). Also, there

---

[1] The Joint Appendix is cited as "A-__". The Record is cited as "R-Dkt __".

1

is no "just reason" to delay appellate review of the purely legal issues presented by the rulings with respect to Smith. The crux of McDonough's action is that Smith fabricated testimony of the other defendants to wrongfully prosecute him. Therefore, he will be required to prove the principal acts of Smith to establish the conspiratorial liability of the four defendants remaining in the case.

Additionally, discovery and trial proceedings will involve thousands of documents as well as the deposition and trial testimony of dozens of witnesses. If there is a reversal of the dismissal of the claims against Smith on appeal after final disposition of the pending claim, essentially the entire matter will be re-litigated against all defendants based on the same facts and allegations. On the other hand, there is little or no risk of piecemeal review because the legal issues presented will be either resolved as to all defendants or they are unique to Smith and will not again be raised. Furthermore, dismissal of the claims against Smith presents appellate issues separate from the factual evidentiary matters which will be litigated in the single claim pending against the remaining defendants.

On February 17, 2017, plaintiff moved for partial final judgment pursuant to Fed. R. Civ. P. 54(b) based on dismissal of all claims against Smith, who joined in the motion. (R-Dkt.131; R-Dkt.133) On March 2, 2017, defendant Kevin O'Malley consented to the motion conditioned on appeal as to him. (R-Dkt.136) Thereafter, defendant John Ogden's motion to stay proceedings pending this appeal was

2

granted by order dated and entered on March 2, 2017. (R-Dkt135) The motion was pending a contemporaneous hearing date at the time of the filing of this appeal.

Plaintiff filed a notice of appeal on January 28, 2017 from partial final judgment disposing all claims against Smith. (A-221)

## STATEMENT OF ISSUES FOR REVIEW

### Section 1983 Prosecutor Fabrication of Evidence Due Process Claim

1.      Does a § 1983 due process claim based on a prosecutor's fabrication of evidence to initiate and continue a baseless prosecution accrue upon favorable termination because it is akin to a malicious prosecution?

a.      Are such claims to remedy deprivations caused by wrongful misuse of legal process distinct for accrual purposes from § 1983 fair trial claims that arise from police fabrication of evidence to provide probable cause for arrest or other conduct that does not necessarily impugn the validity of the process or any conviction because there is untainted evidence supporting arrest or conviction?

b.      Did the District Court err by failing to determine that the due process claim was akin to malicious prosecution which accrues upon favorable termination, and, instead, apply to it the rule for accrual of fair trial claims arising from police fabrication of evidence to provide probable cause for arrest or that does not necessarily impugn the validity of the process or any conviction because there is untainted evidence independently supporting arrest or conviction?

3

c.    Does a wrongful prosecution based on fabricated evidence constitute a continuing violation that gives rise to accrual of a "complete and present" § 1983 due process claim upon favorable termination of proceedings?

**Section 1983 Malicious Prosecution Claim against Prosecutor**

2.    Did the District Court err by failing to accept as true the complaint allegations that the defendant prosecutor did not have absolute immunity because he acted without jurisdiction by unlawful appointment and beyond legal authority by prosecuting plaintiff for acts that do not constitute crimes under state law, and instead dismiss the § 1983 malicious prosecution claim although defendant failed to establish that those allegations were without merit as a matter of law?

### STATEMENT OF THE CASE

**A.    The Nature of the Case**

This is a § 1983 action premised on a prosecutor's egregious misconduct in initiating a baseless prosecution for nefarious purposes. It is a quintessential claim of malicious prosecution premised upon the fabrication of evidence.

McDonough's core allegation is that Smith fabricated testimonial evidence to wrongfully frame and convict him, primarily to protect political candidates and operatives from prosecution for readily provable absentee ballot crimes they

4

committed to win election in a minor party primary. ¶¶1-17, 510-72, 740-808, 813-30, 831-44, 851-58, 998-1066, 1094-1160, 1171-81 (also Nature of Action p. 1-2)[2]

McDonough asserted due process fabrication of evidence (Count I)[3], and malicious prosecution (Count II) claims against special prosecutor Smith and the individual defendants, conspiratorially. ¶¶1209-18 He also asserted a *Monell* policy claim against defendant Rensselaer County (Count III). ¶¶1219-20

McDonough brought this action to recover damages for the due process and other constitutional deprivations he suffered as a result of Smith's prosecution of him for acts he did not commit by the fabrication of evidence. ¶¶812, 815, 1172, 1184, 1196-1208, 1211, 1216 (also Nature of Action, p. 1-2) Thus, his claim is akin to common law malicious prosecution, i.e. abuse of judicial process to pursue a prosecution without probable cause.[4]

**B.    The Course of Proceedings and Disposition Below**

McDonough commenced this action on December 18, 2015, (A-19) within three years of his December 21, 2012 acquittal at retrial. ¶1200

---

[2]    Complaint (A-19 and R-Dkt. No. 1), paragraphs cited as "¶__".

[3]    Under authority of *Zahrey v. Coffey,* 221 F.3d 342 (2d Cir. 2000).

[4]    "[T]he New York Court of Appeals succinctly defined a common law malicious prosecution action as follows: … one that is begun in malice, without probable cause to believe it can succeed, and *which finally ends in failure.* (Emphasis supplied)." *DiBlasio v. City of New York*, 102 F.3d 654, 657 (2d Cir. 1996). See, also, *Manganiello v. City of New York,* 612 F.3d 149, 161 (2d Cir. 2010) (elements of § 1983 malicious prosecution in New York).

5

All defendants, except Kevin McGrath and Anthony Renna *pro se*, moved to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on the basis of absolute immunity and failure to state a cause. (R- Dkt. Nos. 12, 40, 50, 56, 64, 73, 96 and 97) The Court decided all motions by bifurcated Memorandum-Decisions and Orders, dated September 30, 2016 and December 30, 2016 (the "Rulings"). (A-131, A-182)

In its Rulings, the District Court dismissed plaintiff's fabrication of evidence claim as time-barred. (A151-A156) It dismissed the malicious prosecution claim against Smith on the basis of absolute immunity (A191-A198) despite allegations that he acted beyond the scope of authority and jurisdiction pursuant to an invalid appointment and prosecution of plaintiff for acts that do not constitute crimes as a matter of state law. ¶¶229-61, 831-44 The District Court also dismissed that claim against all other moving defendants, except William McInerney and John Ogden, on the basis of testimonial immunity or failure to state a claim. (A156-A181) Thus, only the malicious prosecution claim stands against them and non-moving defendants Kevin McGrath and Anthony Renna.

On January 27, 2017, McDonough filed a Notice of Appeal from dismissal of all claims against Smith. (A-221)

## STATEMENT OF FACTS

**A.    Complaint § 1983 Due Process and Malicious Prosecution Claims**

6

McDonough, the Democratic Rensselaer County Elections Commissioner, in his complaint alleged that Smith fabricated evidence to prosecute him as follows.

Pursuant to an extrajudicial conspiracy, Democrat District Attorney Richard McNally had Democrat defendant Smith unlawfully appointed special prosecutor to investigate and prosecute absentee ballot crimes that Republicans discovered Democrat operatives and candidates committed to win a local minor party primary. ¶¶1, 7, 229-61 (also, Nature of Action, p. 1-2) Smith then fabricated evidence to prosecute McDonough to protect known Democrat candidates and operatives who committed absentee ballot forgery in the subject election pursuant to a scheme used for over 25 years from prosecution. ¶¶1-17, 51-114, 219-21, 308-16, 322-34

McDonough was innocent and not implicated in any crime. ¶199 Smith also had sufficient evidence soon after being appointed to convict all the guilty persons. ¶¶269-303, 335-51 Nonetheless, he targeted McDonough for prosecution ¶¶224-28, 262-68 and conducted an investigation to fabricate evidence and prosecute him in lieu of known persons who committed the crimes. ¶¶322-34

In doing so, Smith: told two of three main culprits that they would not be prosecuted; ¶¶308-21 ignored and did not obtain evidence; ¶¶352-509 adopted a prosecution theory that a cooperating operative told him was nonsensical and wrong; ¶¶510-72 told supervisory state police the falsehood that the guilty candidates and operatives could not be prosecuted; ¶¶573-76, 942-47 personally

7

threatened to "fuck" McDonough to keep him from talking with police; ¶¶577-608 and, gave the remaining key guilty candidate and brother of a state supreme court justice immunity to deny guilt, not disclose any truthful information and falsely accuse McDonough of writing information on two of the many absentee ballot applications evidence proved he fraudulently obtained and/or forged to obtain and forge absentee ballots, all of which was contrary to irrefutable documentary and testimonial evidence but laid a foundation for McDonough's prosecution. ¶¶609-50

The defendants took other overt acts to set-up McDonough's prosecution, including advising a witness not to disclose admissions two primary culprits made about the crimes because "*It Will Be Over Soon*" and making extrajudicial statements likely to prejudice his trial, ¶¶651-64, ¶¶908-15). Smith also did not obtain evidence against the guilty candidates and operatives ¶¶665-73, personally assisted the state police laboratory in using new methods to extract McDonough's DNA from documents, ¶¶686-707 began presenting a case before a grand jury without sufficient evidence to indict, ¶¶708-17 and dissuaded McDonough from testifying before the grand jury contrary to his attorney's advice. ¶¶ 720-39

Smith then initiated the prosecution by presenting before a grand jury the fabricated testimony of defendants McGrath, Ogden and O'Malley as well as two affidavits with forged voter signatures he notarized. ¶¶740-830

8

Smith indicted McDonough on seventy-four felony charges of forgery and possession of forged instruments for writing false information on applications that candidates and operatives fraudulently obtained, forged and filed to obtain, falsely vote and file absentee ballots in forged envelopes. ¶¶1, 809-12

Smith had no intention of prosecuting any guilty candidate or operative ¶¶831-58 and took other acts to continue the prosecution, including opposing McDonough's request that the County bring a special civil proceeding to have Smith's appointment nullified because he had no legal standing, to do so ¶¶859-73 and fabricating the opinion testimony of a forensic document examiner. ¶¶880-903

In defending his innocence, McDonough exposed the scapegoat prosecution and falsehood Smith that told state police to protect the guilty persons. In response, the Federal Bureau of Investigation ("FBI") and supervisory state police interviewed McDonough, questioned Smith's actions and investigated the matters without Smith's knowledge. Those actions forced the ostensible prosecutions and Smith's fabrication of the written statements of three other main culprits to further the prosecution. ¶¶576, 855, 904-31, 942-56, 993-97

In response, Smith took further action to continue the malicious prosecution, cover-up the conspiracy and protect the guilty persons, including: quashing the FBI investigation and accusing an agent of misconduct; ¶¶932-70, 975-87 having his unlawful appointment extended to prior elections to protect defendant McInerney

9

and interviewing him without the knowledge of law enforcement; ¶¶971-74, 998-1004 fabricating statements of the three guilty persons prosecuted only because of the supervisory state police and giving them favorable plea agreements; ¶¶1005-66, 1072-76 making a false personnel complaint against a supervisory state police investigator and compelling his questioning to ask if the FBI "bugged" his office or "tapped" his telephone; ¶¶1067-71 and, arranging jurisdictionally defective pleas for two primary culprits. ¶¶1077-93

Smith then introduced fabricated testimony at trial and retrial, ¶¶1094-1160 including defendant Renna's testimony which was so patently incredible the court ordered it stricken from the record at the retrial. ¶¶1121-26

McDonough alleged that Smith did not have immunity because he: (1) fabricated evidence in administrative and investigatory capacities to pursue the prosecution;[5] (2) acted in absence of jurisdiction by unlawful appointment (i.e. District Attorney failed to establish a basis for disqualification by motion as strictly required by state law), and, (3) acted beyond legal authority by prosecuting him for acts that are not crimes as a matter of state law.[6] ¶¶229-61, 831-44

---

[5]     See, *Zahrey*, 221 F.3d; *Barbara v. Smith,* 836 F.2d 96, 99-100 (2d Cir.1987).

[6]     McDonough also argued that Smith did not have absolute immunity from the malicious prosecution claim for those reasons. See, *Spalding v. Vilas*, 161 U.S. 483 (1896); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Barr v. Abrams*, 810 F.2d 358 (2d Circ. 1987); *Schloss v. Bouse*, 876 F.2d 287 (2d Cir. 1989).

Finally, McDonough brought this action to recover for his due process and other constitutional deprivations caused as a result of a highly-publicized wrongful prosecution that ended in acquittal on December 21, 2012, after two lengthy trials. ¶¶812, 815, 1172, 1184, 1196-1208, 1211, 1216 (also, Nature of Action, p1-2)

### B. Fed. R. Civ. P 12(b)(6) Motions

### 1. § 1983 Due Process Fabrication of Evidence Claim

Defendants Brown and McNally moved to dismiss plaintiff's due process fabrication of evidence claim as untimely based on the standard rule for accrual[7] as applied to fair trial police fabrication of evidence claims not akin to a common law malicious prosecution because they would not necessarily impugn the integrity of the process or any conviction,[8] i.e. when a plaintiff knows or should know of a wrong for which damages may be recovered in action. (A109-A112, A114-A115)

---

[7]     Citing *Owens v. Okure,* 488 U.S. 235, 251 (1989) and *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994).

[8]     Citing *Bailey v. City of New York*, 79 F. Supp.3d at 424, 440 (E.D.N.Y. 2015) for its citation to the ruling in *Mitchell v. Victoria Home,* 377 F. Supp.2d 361, 373 (S.D.N.Y. 2005) about accrual of a false arrest analogous police fabrication of evidence fair trial claim. In turn, the *Mitchell* ruling relied on this Court's holding in *Veal v. Geraci*, 23 F.3d 722, 724-25 (2d Cir. 1994) regarding accrual of a fair trial claim based on police fabrication of line-up identification evidence that did not necessarily impugn the integrity of the entire judicial process because it was after arrest based on untainted photograph identification, i.e. an independent untainted basis of probable cause for prosecution. Notably, however, even in *Bailey*, the Court held that the malicious prosecution and analogous fair trial claims asserted did not accrue until the related conviction was vacated.

11

Defendants Brown also specifically relied on the ruling of *Mitchell*, 377 F. Supp.2d at 373, which applied the standard accrual rule to a police fabrication of evidence false arrest-type claim. (A110)

Defendant Rensselaer County moved to dismiss the due process claim as untimely based on the general rule for accrual of claims as restated in *Wallace v. Kato*, 549 U.S. 384, 393 (2007); i.e. "the standard rule is that [accrual occurs] when the plaintiff has 'a complete and present cause of action' ... that is, when 'the plaintiff can file suit and obtain relief.'" (citations omitted) (A117-A118)

Notably, Smith and the other six defendants did not move to dismiss the fabrication of evidence claim as untimely.

### 2.  § 1983 Malicious Prosecution Claim

All moving defendants sought dismissal of the malicious prosecution claim on grounds of absolute immunity and failure to state a claim.

Smith addressed McDonough's allegations that he did not have immunity because unlawfully appointed in violation of state law (¶¶A229-61) by reference to inapposite case rulings and conclusory assertions that would raise questions of fact and law in a summary judgment context. (A120-A121; A125-A127)

Smith did not initially address the allegations he prosecuted McDonough for acts that are not crimes as matter of law. ¶¶A831-844 In reply papers, Smith

12

argued that the state court denied a motion to dismiss on that ground and two state cases cited in support of the allegations were distinguishable. (A128-A130)

### C.      The District Court's Decision

### 1.      Due Process Fabrication of Evidence Claim

The District Court held that plaintiff's fabrication of evidence claim accrued prior to acquittal because it was a "clearly established principle that fabrication of evidence claims accrue when the plaintiff learns, or should have learned, the evidence was fabricated" and it caused injury. (A152-A153)

The District Court based its decision on three cases: *Mitchell*, 377 F. Supp.2d at 373;[9] *Keller v. Sobolewski,* No. 10-cv-5198, 2012 WL 4863228, *4 (E.D.N.Y. Oct. 12, 2012);[10] and, *Bailey*, 79 F. Supp. 3d at 444. [11] (A152-A153)

### 2.      Malicious Prosecution Claim

In regard to the malicious prosecution claim (Count II), the District Court failed to accept as true the complaint allegation that Smith did not have immunity

---

[9]      In particular, its citation to *Veal*, 23 F.3d at 724-25, discussed below.

[10]      Quoting the holding of *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 130 [sic] (2d Circ., 1997) that a "§ 1983 claim for deprivation of the right to a fair trial *arises* '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." (i.e. establishing that police fabrication of evidence itself gives rise to a fair trial claim)

[11]      Quoting *Mitchell*, 377 F. Supp. 2d at 373, citing the ruling in *Veal*, 23 F.3d at 724, that a "§ 1983 claim premised on fabrication of evidence '*accrues* when the plaintiff learns that the evidence was fabricated and such conduct causes the claimant some injury.[']" (emphasis added), discussed below.

13

because his appointment was invalid as a matter of state law or rule on its merits. (A198-A204) Instead, it held that McDonough "provided no argument that this Court has subject matter jurisdiction over" those "claims." (A202)

The District Court footnoted that McDonough had unsuccessfully moved to disqualify Smith in the criminal prosecution and the New York Court of Appeals held in *Working Families Party v. Fisher*, 23 N.Y.3d 539, 544 (2014) that an "Article 78 proceeding was an appropriate remedy to void the improper appointment of a special prosecutor." The Court then reasoned:

> "[T]o the extent that Plaintiff lost in state court and is now attempting to relitigate that case in federal court, those "claims" are barred by the Rooker-Feldman doctrine. See *Exxon Mobile Corp., v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (holding that federal courts do not have jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments"). … Here, it appears that Plaintiff's claims regarding Defendant Smith's appointment are merely an attempt to appeal a state-court order or relitigate a state-court proceeding, and Plaintiff has provided no argument that this Court has Jurisdiction to hear those claims. As such, the Court will not entertain plaintiff's claims that defendant Smith's appointment was invalid. " (A201-A202)

The District Court did not mention that Smith failed to prove on his motion that McDonough's relevant allegations had no merit as a matter of law. It also did not address the allegation that Smith prosecuted McDonough for acts that do not constitute the forgery crimes charged as a matter of state law.

This appeal followed.

14

## SUMMARY OF ARGUMENT

The Rulings of the District Court are the product of clear error of law.

**I.** The dismissal of McDonough's § 1983 due process claim was clear error because the claim is most analogous to a common law malicious prosecution which does not accrue until favorable termination of the underlying prosecution.

A. The Supreme Court's *Heck* and *Wallace* decisions established that Courts must look to the most analogous common law tort and its accrual rules to determine when the statute of limitations begins on a federal claim.

B. McDonough's claim is that Smith fabricated evidence to initiate and continue a baseless prosecution for nefarious purposes.

C. McDonough alleged due process and other deprivations as a result of a wrongful prosecution based on fabricated evidence, initiated by indictment and continued over two years until acquittal at retrial.

D. If that claim was asserted before the prosecution ended in his favor it would have implied the invalidity of the process and any conviction.

E. Therefore, the claim is most akin to a malicious prosecution and did not accrue until plaintiff's acquittal at retrial.

F. The claim was timely asserted within three years of acquittal.

G. However, the District Court did not look to the most analogous common law tort and its accrual rules to decide when the claim accrued.

15

H.      Instead, the District Court implicitly recast McDonough's claim as being akin to a fabrication of evidence false arrest or other fair trial claim that would not necessarily impugn the integrity of the prosecution or any related conviction if asserted prior to favorable termination.

I.      The District Court also apparently viewed all fabrication of evidence claims as being generically the same for accrual purposes.

J.      The District Court determined that all fabrication of false evidence claims accrue when a plaintiff learns or should have learned about the fabrication and some harm without considering its most analogous common law tort or whether it would necessarily impugn the integrity of the prosecution or any conviction if asserted before its favorable termination.

K.      In doing so, the District Court also apparently conflated the standard rule for accrual of claims (i.e. when a plaintiff learns or should have learned of the fabrication and it causes some injury) with the rule this Court established regarding conduct that gives rise to a fair trial claim based on police fabrication of evidence (i.e. "when a police officer fabricates evidence likely to influence a jury's decision and forwards it to a prosecutor").

L.      In any event, the District Court did not determine the accrual of the fabrication of evidence claim by looking to the most analogous common law tort and its accrual rules as required by *Heck*, *Wallace* and progeny.

16

M.     If the District Court had followed established law, it would have ruled that the due process fabrication of evidence claim asserted is akin to a malicious prosecution which did not accrue until his acquittal at retrial.

N.     The District Court instead relied on cases wherein the standard accrual rule was applied to police fabrication of evidence and other fair trial claims not akin to malicious prosecution that would not necessarily impugn the integrity of the prosecution if asserted before its favorable termination.

O.     Alternatively, a prosecution based solely on fabricated evidence constitutes a continuing violation that, like an unlawful detention, gives rise to a complete and present due process claim upon its termination.

**II.**     The District Court erred by failing to accept as true the allegations that defendant Smith did not have absolute immunity because he acted in absence of jurisdiction by unlawful appointment and beyond legal authority by prosecuting McDonough for acts that do not constitute the crimes charged under state law.

A.     McDonough alleged that Smith acted *ultra vires* and did not have absolute immunity because under state law: (1) his appointment was unlawful, and, (2) he prosecuted him for alleged acts that are not criminal.

B.     In support of his motion, defendant Smith asserted only that his appointment was valid because it was court ordered. He did not brief

17

applicable state law on the matter or establish that the allegations were without merit as a matter of law because the court order was valid.

C.    Smith did not initially mention McDonough's allegations that he prosecuted him for acts that did not constitute the crimes charged under state law. Smith argued only in reply to McDonough's opposition that the state trial court denied his defense motion to dismiss the criminal charges and two cases he relied on were distinguishable. Smith did not brief applicable state law on the matter or establish that the allegations were without merit as a matter of law because the acts are state law crimes.

D.    Regardless, the District Court erred in not accepting the relevant allegations as true as required on a motion to dismiss the pleadings.

E.    Instead, the District Court effectively shifted the burden on the motion to McDonough by asserting that he "provided no argument that this Court has subject matter jurisdiction over" those "claims."

F.    The District Court also erroneously equated McDonough's allegations of fact and controlling state law as a "claim" unsuccessfully litigated in state court and barred by the Rooker-Feldman doctrine.

G.    If the District Court had decided the motion correctly it would have accepted the allegations as true and denied Smith's motion.

18

## STANDARD OF REVIEW

This Court reviews motions to dismiss on the pleadings *de novo*. See *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) ("We apply a *de novo* standard of review to the grant of a motion to dismiss on the pleadings, accepting as true the complaint's factual allegations and drawing all inferences in the plaintiff's favor. The test for evaluating a [motion for judgment on the pleadings] is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6)." (internal citations and quotations omitted); *Manganiello*, 612 F.3d at 161. "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## ARGUMENT

**I.    The District Court Erred by Relying on the Standard Rule for Accrual as Applied to Fabrication of Evidence or Other Fair Trial Claims Not Analogous to Malicious Prosecution and Dismissing Plaintiff's Malicious Prosecution Analogous Due Process Claim as Time-barred**

The District Court's dismissal of McDonough's fabrication of evidence due process claim is the product of a clear error of law.

To determine when the statute of limitations began to run on McDonough's due process claim, the District Court did not look to the most analogous common law tort and its accrual rules as required by federal law. Instead, it considered all fabrication of evidence claims generically as the same and confusingly ruled that

19

they all accrue at the same time regardless of the misconduct giving rise to a claim or the remedy sought, i.e. when a plaintiff learns or should have learned of the fabrication that causes injury. In doing so, the Court recast the malicious prosecution analogous due process claim alleged as akin to one based on police fabrication of evidence to establish probable cause for arrest or other misconduct that would not necessarily impugn the integrity of the prosecution or a conviction. It then relied on a few cases in which the standard accrual rule was correctly applied to such claims to incorrectly rule that McDonough's claim is time-barred.

### A. District Court Erroneously Considered All Fabrication of Evidence Claims as Generic Cause of Action for Accrual Purposes

The District Court simply failed to properly determine when McDonough's claim accrued. Instead, the District Court stated:

> "Significant in this case is the different accrual points for both malicious prosecution and fabrication of evidence claims: 'a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in plaintiff's favor[,]' *Heck v. Humphrey*, 512 U.S. 477, 489 (1994); whereas 'a fair trial claim premised on fabrication of evidence accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury[,]' *Mitchell* [377 F. Supp.2d] at 373 (citing *Veal*[, 23 F.3d] at 724-25 …" (A-152)

Thus, the District Court essentially melded its view of fair trial fabrication of evidence claims as presenting a generic claim with the rulings in *Mitchell*, 377 F. Supp.2d, and *Veal*, 23 F.3d, concerning accrual of a false arrest analogous claims to conclude that all fair trial fabrication of evidence claims have the same accrual

20

point. It appears the Court expanded the misnomer to any fabrication of evidence

claim regardless of its nature or the deprivations it remedies, as follows:

> "Plaintiff's opposition appears to argue that, since the alleged malicious prosecution was based upon the use of fabricated evidence, then both of the claims accrued upon plaintiff's acquittal .... However, none of the cases cited in Plaintiff's opposition, nor any precedent discovered by this Court, contradicts the clearly established principle that fabrication of evidence claims accrue when the plaintiff learns, or should have learned, that the evidence was fabricated. See, e.g., *Keller* [2012 WL 4863228] *4 (*quoting Ricciuti* [124 F.3d] at 127, 130 ('A § 1983 claim for deprivation of the right to a fair trial *arises* "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors"'); *Bailey* [79 F. Supp.3d] at 444 (quotation omitted) ('A claim premised on fabrication of evidence "accrues when a plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury')." (A152-A153)

The District Court then held that McDonough's due process claim was time-

barred because not commenced within three years of when he knew or should have

the fabricated evidence was being used against him; noting he relied solely on the

argument that it did not accrue until he was acquitted. (A155-A156)

The District Court's ruling and rationale is erroneous. As discussed below, it

is well-established that the accrual point of any particular fabrication of evidence

claim is determined by its nature, deprivations claimed and remedies sought based

on its most analogous common law tort and its distinctive accrual rules.

The District Court should have noted that all fair trial claims to which the

general accrual rule has been applied were false arrest or other deprivations that

21

would not have necessarily impugned the integrity of a prosecution or conviction. It also should have noted that it has never been held that a fabrication of evidence claim akin to malicious prosecution accrued before favorable termination.

For instance, a fair trial claim based on police fabrication of evidence to create probable cause for an arrest is akin to common law false arrest or, if there is detention, unlawful imprisonment. See, *Wallace v. Kato*, 549 U.S. at 389. Such a claim would accrue at the time of arrest or release. *Id*. But, the fabrication of evidence to initiate a prosecution gives rise to malicious prosecution and analogous fair trial claims. See, *Bailey*, 79 F. Supp.3d at 446. Those claims accrue upon favorable termination of criminal proceedings. See, also, *Heck*, 512 U.S. at 489.

On the other hand, fair trial claims based on police fabrication of evidence forwarded to a prosecutor after an arrest based on probable cause may be akin to malicious prosecution and accrue on favorable termination where it would necessarily impugn the integrity of the entire process[12] or not akin to a malicious

---

[12]    See, e.g. *Bailey*, 79 F. Supp.3d at 458 (false arrest-type claim time-barred but malicious prosecution and analogous fabrication of evidence claims not because implied invalidity of conviction); *Perez v. Cuomo*, No. 09-cv-1109, 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) (due process right to fair trial claim based on fabrication of evidence leading to conviction is essentially one for damages that would impugn validity of a conviction and *Heck*-barred); *Jasper v. Fourth Court of Appeals*, No. 08-cv-7472, 2009 WL 1383529, at *1 (S.D.N.Y. May 18, 2009) (same); *Jovanovic v. City of New York*, No. 04-cv-8437, 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006), *mot. for reconsideration granted in part on other grounds,* 2008 WL 355515 (S.D.N.Y. Feb. 07, 2008) (*Heck* accrue rule applied to fair trial and malicious prosecution claims based on fabricated

prosecution and accrue at the time of injury where it would not necessarily impugn the entire process.[13] Also, other non-fabrication of evidence claims may be akin to malicious prosecution and accrue on favorable termination of the prosecution because they impugn the judicial process or the validity of a conviction. See, e.g. *Nnodimele v. Derienzo*, No. 13-cv-3461, 2016 WL 3661273 (E.D.N.Y. July 5, 2016) (withholding exculpatory information and tainted lineup); *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (failure to provide favorable

---

evidence when conviction reversed, but not false arrest claim); *Cleary v. County of Macomb*, No. 6-cv-15505, 2007 WL 2669102 at *7-8 (E.D.Mich. Sept. 6, 2007) (due process fabrication of evidence and malicious prosecution claims accrued when charges dismissed after conviction reversed; not time-barred under *Wallace*, 549 U.S. at 389, as were false arrest and imprisonment claims); *Johnson v. Dossey*, 515 F.3d 778, 781 (7th Cir. 2008) (*Brady*-based due process claims necessarily implicate invalidity of a conviction and strong judicial policy against conflicting resolutions of criminal and civil actions; therefore they are *Heck* barred and accrue on reversal of conviction and favorable termination of charges).

[13] See, e.g. *Mitchell*, 377 F. Supp. 2d at 373-74 (fair trial claim analogous to false arrest because limited to officer's preparation and filing of accusatory instrument based on witness statement that provided probable cause for prosecution accrued at the time of some injury); *Woods v. Candela,* 13 F.3d 574, 575-76 (2d Cir.1994) (unlawful arrest and search fair trial claim accrued when acts occurred, not when conviction vacated); *Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016) (fair trial falsification of evidence allegations are not limited to false arrest and malicious prosecution claims because it would ignore collateral consequences where officer had probable cause for arrest); *Veal*, 23 F.3d at 724 (fair trial claim based on tainted lineup subsequent to identification made by photograph that provided independent basis for arrest and prosecution) *Mack v. Varelas,* 835 F.2d 995, 999 (2d Cir. 1987) (claim based on sheriff's failure to produce defense witness at trial accrued when plaintiff was incarcerated after conviction, not upon reversal).

23

evidence that reasonably may have affecting result of trial); *Amaker v. Weiner*, 179 F.3d 48, 51-2 (2d Cir. 1999) (fabrication of evidence and suppression of favorable evidence); *Bailey*, 79 F. Supp.3d at 444-46 (same).

**B.      District Court Rejected Assertion that Plaintiff's Due Process Claim is Akin to Malicious Prosecution**

McDonough asserted a due process claim arising from Smith's fabrication of evidence to pursue a baseless prosecution for nefarious reasons.

Therefore, his claim is most analogous to malicious prosecution and accrued upon acquittal after retrial. See, also, *Zahrey*, 221 F.3d at 346 (prosecutor's fabrication of evidence to use in proceedings gives rise to due process claim); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 389 (4th Cir. 2014), *cert. denied,* 135 S.Ct. 1893 (2015) (courts must look to most analogous common law tort to determine accrual); *Bradford v. Scherschligt*, 803 F.3d 382, 387-89 (9th Cir. 2015) (fabrication of evidence claim is akin to malicious prosecution for accrual purposes); *Mondragon v. Thompson*, 519 F.3d 1078, 1082-83 (10th Cir. 2008) (same); *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86, 1288-90 (10th Cir. 2004) (same)**;** *Devereaux*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) (same); *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998) (same implied).

Still, the District Court rejected McDonough's assertion that his due process claim is most analogous to a malicious prosecution and accrued upon acquittal.

**C.** **District Court Erred in Relying on Cases in Which Standard Accrual Rule was Applied to Fabrication of Evidence and Other Fair Trial Claims Not Akin to Malicious Prosecution**

It is respectfully submitted that the District Court rationale is based on a mischaracterized of all fabrication of evidence claims and circuitous allusion to inapposite rulings about accrual of claims not akin to a malicious prosecution. The cases relied upon concerned the fabrication of evidence to establish probable cause for arrest or where there existed untainted independent probable cause for prosecution or other misconduct that would not have necessarily impugned the integrity of the entire proceedings or validity of a conviction. Those holdings are not relevant to McDonough's claim which is analogous to a malicious prosecution.

The District Court relied primarily on *Mitchell*, 377 F. Supp.2d, and *Veal*, 23 F.3d, supra. In *Mitchell*, the plaintiff asserted § 1983 malicious prosecution, false arrest and fair trial claims regarding job termination, arrest and prosecution against a state investigator who prepared and signed the accusatory instrument. The Court held that the fair trial fabrication of evidence claim was time-barred because it was brought more than three years after a prosecutor filed that document to initiate the prosecution. 377 F.Supp.2d at 374. Critically, however, the claim was based on the investigator's exaggeration of observations of a witness whose affidavit provided probable cause for prosecution, i.e. untainted evidence that independently supported arrest or conviction. *Id.* at 366-67. Also, plaintiff's "allegations

25

regarding [the investigator's] involvement in her case cease[d] as of the time he allegedly prepared … and executed, the accusatory instrument ...." *Id.* at 374-75.

Thus, in *Mitchell*, aside from the fact that the prosecutor was an intervening actor who initiated the criminal prosecution based on a witness affidavit, the fair trial claim was not analogous to a malicious prosecution without probable cause.[14] Rather, that claim arose solely from an investigator's fabrication of evidence where there was probable cause for prosecution, which this Court established gives rise to a § 1983 fair trial claim even if no trial is held. See, *Ricciuti*, 124 F.3d at 129-30.

In *Mitchell*, 377 F. Supp.2d at 373, the Court referred to and ruled on claims based on police fabrication of evidence given to a prosecutor that are not analogous to malicious prosecution and accrued at the time of harm, as follows:

> "Under Second Circuit law, fabrication of evidence by a law enforcement officer and forwarding of such evidence to prosecutors is considered inherently harmful, regardless of whether there existed untainted evidence independently supporting arrest or conviction. *See, e.g., Ricciuti* [124 F.3d at 129-30]. … And for statute of limitations purposes, a § 1983 claim, including a Sixth Amendment fair trial claim, accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm. *Veal* [23 F.3d at 724]

---

[14]   *See, e.g., Murphy v. Lynn,* 118 F.3d 938, 944 (2d Cir.1997) ("Further, since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings. … *e.g.,* by the filing of an indictment ...") (internal citation omitted).

(citing *Singleton v. New York,* 632 F.2d 185, 191 (2d Cir. 1980)). 'The reference to `knowledge of the injury' does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful.' *Id.* (citing *Woods v. Candela,* 13 F.3d [at 575-76]) (claim for unlawful arrest and search accrued when, with accused's knowledge, those acts occurred, not when appellate court later vacated his conviction); *Mack* [835 F.2d at 999] (claim based on sheriff's failure to produce a defense witness at trial accrued when the accused was incarcerated as a result of his conviction, not upon eventual ruling by appellate court as to whether that failure would warrant reversal of conviction). Thus, a fair trial claim premised on fabrication of evidence accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury. [*Veal*] at 724-25."

However, the ruling in *Veal*, 23 F.3d, more clearly makes the point because it concerned a due process claim related to a tainted lineup after an arrest based on untainted photo-array identification. Thus, because there was an independent basis of probable cause for arrest and prosecution the claim was not analogous to malicious prosecution and it accrued at the time of injury under the standard accrual rule. Even then, this Court looked to the nature of the alleged deprivation to determine when the claim accrued. In *Veal*, 23 F.3d at 726, this Court noted:

A claim does not accrue [ ] until the challenged conduct causes the claimant injury. In some cases, a tainted lineup identification could result in an arrest that would constitute the requisite injury. Here, however, the arrest was the result of [identification of Veal's] picture from a photographic array; the challenged lineup followed the arrest. Given the prior photographic identification, it is questionable whether a failure [ ] to identify Veal in the lineup would have resulted in [his] release from custody. Hence, the injury to Veal … would seem to have been his 1988 conviction and imprisonment. We conclude that Veal's present claim may have accrued as early as … when the possible tainting of the lineup identification was disclosed, but that it

27

certainly accrued no later than … when Veal was sentenced for the crimes of which he was convicted with the aid of that identification. (internal citations omitted)

The District Court below also relied upon *Keller,* 2012 WL 4863228. However, the issue there was whether police who falsely arrested plaintiff, forwarded false and misleading reports to prosecutors and gave false testimony were entitled to qualified immunity. The Court did not address when the fair trial claim accrued or whether it was analogous to malicious prosecution. It merely quoted the rule of *Ricciuti,* 124 F.3d at 130-31, concerning conduct that gives rise to a fair trial claim based on police fabrication of evidence (i.e. "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors").

Furthermore, the statement in *Keller*, 2012 WL 4863228, *4, that "favorable termination is not a pre-requisite to the commencement of a fair trial claim" has no relevance to the issue of when a due process claim accrues. Indeed, if that ruling equated to a converse rule that all such claims accrue at the time of fabrication and some harm without regard to whether it necessarily impugned the prosecution or conviction, the accrual rulings of *Heck,* 512 U.S. at 487, *Wallace*, 549 U.S. at 393 and progeny would have no meaning. The floodgates of premature and merit-less litigation against police and prosecutors during prosecutions would also be opened.

28

In fact, the assertion that the lack of need for favorable termination of a prosecution to state a fabrication of evidence claim means that it accrues at the time of injury regardless of any conviction or favorable termination is contrary to established federal law as well as specifically rejected by Courts in the context of various fair trial and due process claims.[15]

Most significantly, as discussed below, pursuant to *Heck*, *Wallace*, and progeny, the accrual of any § 1983 claim is determined by looking to the most analogous common law and its distinctive accrual rules not by whether favorable termination of the underlying prosecution is an element of the claim.

---

[15] See, *Poventud v. City of New York*, supra, at 132 (citing *Amaker*, 179 F.3d at 51-52 ("This Court has emphatically and properly confirmed that *Brady*-based § 1983 claims necessarily imply the invalidity of the challenged conviction … *in which the Brady violation occurred*."); *Nnodimele v. Derienzo*, 2016 WL 3661273, at *2-4 (*Wallace* does not extend to fabrication of evidence and *Brady* fair trial claims that necessarily imply invalidity of conviction; such claims do not accrue until prosecution ends favorably); *Bailey*, 79 F. Supp.3d at 455 (fabrication of evidence fair trial claim asserted before conviction was invalidated would have been dismissed because necessarily implied its unlawfulness); *Bradford*, 803 F.3d at 387-88 (fair trial fabrication of evidence claim accrued on acquittal at retrial after conviction reversed); *Jasper*, 2009 WL 1383529, at *1 (fair trial claim not cognizable where conviction remains valid); *Jovanovic*, 2006 WL 2411541, at *12 (*Wallace* is limited to false arrest claims and *Heck* deferred accrual rule applies to other fair trial claims); *Mondragon*, 519 F.3d at 1082-83 (*Wallace* applies only to violations preceding legal process and due process claims arising upon initiation of legal process accrue upon its favorable termination).

If favorable termination is an element or prerequisite to accrual of the most analogous common law tort, the federal claim accrues at that point. If not, the claim accrues under the standard federal rule when the plaintiff has a complete and present cause of action. See, *Heck*, *Wallace*, and progeny.

Thus, a fair trial claim based on the fabrication of evidence to create probable cause for arrest is analogous to false arrest or unlawful detention and accrues at the time of arrest or end of detention. It also may be brought at any time after an injury and regardless of whether any trial is held or any conviction obtained. See, *Wallace*, 549 U.S. at 388-89; *Ricciuti* 124 F.3d at 127, 129-30.

However, a due process claim based the fabrication of evidence to pursue a baseless prosecution is analogous to malicious prosecution and does not accrue until a favorable termination of the prosecution because it necessarily would impugn the integrity of the entire process and any conviction. See, *Heck*, 512 U.S.; *Wallace*, 549 U.S. Thus, if there is no conviction, the claim accrues on acquittal or other favorable termination. If there is a conviction, the claim does not accrue until the conviction is reversed and prosecution ends favorably.

Differently stated, under *Heck*, *Wallace*, and progeny, a conviction defers the accrual of a fabrication of evidence claim that necessarily implies its invalidity because it is most analogous to a malicious prosecution even though favorable termination is not an element of the federal claim. If the conviction is reversed, the

30

claim accrues only if, and when, there is a final favorable termination of the proceedings. Conversely, a fabrication of evidence claim that is akin to a malicious prosecution does not accrue until the prosecution is favorably terminated because it would necessarily impugn the entire legal process or any conviction. However, the analysis is the same regardless of the prosecution's outcome or label of the claim.

The District Court below also relied upon *Bailey*, 79 F. Supp. 3d at 444. However, the referenced ruling is merely a restatement of *Mitchell*, 377 F. Supp.2d, regarding accrual of fabrication of evidence false arrest analogous or other fair trial claims that do not necessarily impugn the prosecution (i.e. not akin to malicious prosecution). As stated, that ruling is not relevant to the determination of when McDonough's malicious prosecution analogous claim accrued.

Ironically, *Bailey* also shows that if a fabrication of evidence claim impugns the validity of a conviction it does not accrue until there is a favorable termination. 79 F. Supp.3d at 444-47. Therein, plaintiff asserted § 1983 false arrest, malicious prosecution and fair trial claims based on fabrication of identification testimony after reversal of conviction and favorable termination. The Court looked to the most analogous common law tort for each claim, applied their distinct accrual rules and held that the malicious prosecution and fair trial claims were timely under *Heck* but the false arrest claim was time-barred under *Wallace*. *Id.* at 445-48.

Furthermore, in *Bailey* the District Court noted:

31

"A fair trial claim that would impugn the validity of a conviction must be dismissed. ... A section 1983 claim for the denial of a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction. *See Heck,* 512 U.S. at 489-490 [ ]. The claim finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments. *See … United States v. Ruiz,* 536 U.S. 622, 628 [ ] (2002) (recognizing that the Fifth and Sixth Amendments form "part of [the Constitution's] basic `fair trial' guarantee"). …" *Id.* at 445

The Court in *Bailey* also noted that although fair trial and malicious prosecution claims are distinct an32d probable cause is not a defense to the former, when both are based on the same fabrication of evidence to establish probable cause for arrest or prosecution, "the question of whether the defendant fabricated evidence becomes synonymous with the question of whether genuine probable cause existed, and accordingly a plaintiff's malicious prosecution and fair trial claims would rise or fall together." 79 F.Supp.3d at 446-47 (citation omitted). In holding that the claim was *Heck*-barred until the conviction was reversed and favorable termination obtained because it would have necessarily implied its invalidity, the Court also rejected argument it was untimely because favorable termination was not a requirement. *Id.* at 445-46.

This Court has acknowledged that "[n]ot every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination. … Unlike malicious prosecutions, many violations of constitutional rights, even during the criminal process, may be remedied without impugning the

32

validity of a conviction. … Even *Heck* acknowledges that many unreasonable searches could lead to § 1983 actions that exist independent of the termination of the criminal proceedings." *Poventud*, 750 F. 3d at 132 (citations omitted).

However, as discussed, the fact that fabrication of evidence claims like McDonough's may not be asserted without impugning the integrity of the pending prosecution or validity of any conviction make them most analogous to malicious prosecution and accrue only if there is a final favorable termination of prosecution.

**D.      District Court Erred by Failing to Look to Most Analogous Common Law Tort and its Accrual Rules to Determine When Statute of Limitations Began on McDonough's Due Process Claim**

As stated, in deciding that McDonough's due process claim was time-barred, the District Court erroneously relied on several cases in which the "standard rule" for accrual was applied to fair trial claims not analogous to malicious prosecution. The District Court then erroneously held that McDonough's due process claim accrued when he did or should have learned the evidence was fabricated and it caused some injury. Clearly, if McDonough's claim was subject to that rule, it would have accrued on the date of indictment, arraignment or use of false testimony at the first trial, but, in any case, sometime prior to acquittal at retrial.

However, federal courts have used the common law of torts as a starting point to determine aspects of § 1983 claims since *Carey v. Piphus,* 435 U.S. 247, 257-58 (1978). Here, McDonough's § 1983 claim arises from Smith's fabrication

of evidence to wrongfully prosecute him for nefarious purposes. Therefore, the question is when does a § 1983 claim alleging due process and trial deprivations as a result of a wrongful prosecution solely by the fabrication of evidence accrue?

The applicable statute of limitations for § 1983 claims is three years. *Owens*, 488 U.S. at 251; *Paige v. Police Department of The City of Schenectady,* 264 F.3d 197, 199, n. 2 (2d Cir. 2001). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law. …. Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles. See *Heck*, 512 U.S. 477, at 483 [ ]; *Carey* [435 U.S. at 257-58]. Under those principles, it is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action - that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (other citations omitted). However, "[a]lthough a § 1983 claim generally accrues 'when the plaintiff knows or has reason to know of the harm' he or she has suffered, the precise date varies depending on the type of claim alleged." *Perez v. Cuomo*, 2009 WL 1046137, at *6 (citations omitted).

Again, it is clear that not all § 1983 claims accrue upon the date of injury. Pursuant to *Heck*, a § 1983 cause of action that necessarily impugns the validity of a conviction or sentence does not accrue unless and until the related criminal proceedings are favorably terminated. 512 U.S. at 489. The *Heck* deferred accrual

34

rule is based upon "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* Furthermore, the Supreme Court clarified in *Wallace* that courts are to determine the accrual date for a § 1983 claim by looking to the most analogous common law tort and its distinct rules for accrual. 549 U.S. at 388-89.

"[T]he term "common law," in this context, refers … to general principles of common law … [Federal courts] have turned to the common law in § 1983 cases … because … 'over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights.' *Carey,* 435 U.S. at 257 [ ]. Those rules are applicable by analogy … to constitutional torts. The Supreme Court's analysis in *Heck* serves as an illustration. In *Heck,* a prisoner … filed a § 1983 action complaining that defendants … 'engaged in an "unlawful, unreasonable and arbitrary investigation" leading to [his] arrest; "knowingly destroyed" evidence "which was exculpatory in nature and could have proved [his] innocence"; and caused "an illegal and unlawful voice identification procedure" to be used at [his] trial.' 512 U.S. at 479 [ ] (internal brackets omitted). *Heck* considered whether the common law rule requiring the prior criminal proceeding to be terminated in favor of the accused before a malicious prosecution claim can be raised is applicable to federal § 1983 actions. *Id.* at 484-86 [ ]. Rather than

narrowly focusing on the particular formulation given to the tort by the [state] courts, the Court built its analogy by surveying treatises and case law from a variety of jurisdictions. *Heck* thus teaches that federal courts fashioning constitutional analogues to traditional common law torts should refer to the general common law tradition…" *Pierce*, 359 F.3d at 1288-89.

Most significantly, in *Heck*, the plaintiff asserted a § 1983 due process claim considered to be malicious prosecution analogous because its success would have necessarily implied the invalidity of the conviction.

**E.     Accrual of § 1983 Claim Determined by Analogous Common Law**

"The inquiry here is therefore not as simple as merely identifying the onset date of injury. Indeed, the limitations period 'on common-law torts do[es] not always begin on the date that a plaintiff knows or has reason to know of his injury.' *Owens* [ ]*,* 767 F.3d [at 389]. To determine the proper date of accrual, we look to the common law tort most analogous to [plaintiff's] claim. *See Wallace,* 549 U.S. at 388-89 [ ]." *Bradford*, 803 F.3d at 387-88. See, also, *Varnell v. Dora Consolidated School District*, 756 F.3d 1208, 1215 (10th Cir. 2014) (same); *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013) (same). Even though most common-law torts accrue when a plaintiff has a complete and present cause of action, *Wallace* dictates that Courts must apply any distinctive rules for accrual of

the common law tort most analogous to the claim. See, *Wallace* 549 U.S. at 389; *Bradford*, 803 F.3d at 388; *Owens*, 767 F.3d at 389.

In *Wallace*, the Supreme Court decided when a § 1983 false arrest claim accrues by looking to the most analogous common law tort and its accrual rules. It first determined that false imprisonment was most analogous to a false arrest claim because it remedies detention *without legal process*. 549 U.S. at 388-89. The Court also "noted that Wallace could have brought his claim under § 1983 'immediately upon his false arrest.' *Id.* at 390 n. 3 [ ] … because [his] injury commenced at that date, and 'a person falsely imprisoned has the right to sue on the first day of his detention.' *Id.* (citation omitted). The Supreme Court went on to explain, however, that under the common law, the statute of limitations for false imprisonment does not begin to run at the *outset* of a plaintiff's false imprisonment; rather, limitations begin to run only at the *end* of a plaintiff's false imprisonment. *Id.* at 389 [ ]. Deferring to the common law's 'distinctive rule,' the Court selected the date on which Wallace's false imprisonment ended - not the date on which it began - as the start of the operative limitations period. *Id.* at 391-92 [ ]." *Owens*, 767 F.3d at 389.

In *Wallace*, the Supreme Court also discussed the common law tort of malicious prosecution that arises from, and remedies, misuse of the legal process. "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such*

37

*process* - when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process. If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." 549 U.S. at 389-90. (emphasis in original, internal citations omitted)

Thus, under common law principles, a malicious prosecution claim provides the remedy for deprivations arising from the wrongful use of the judicial process and does not accrue unless and until the underlying criminal proceedings terminate in a plaintiff's favor. *Wallace v Kato*, 549 U.S. at 392; *Heck*, 512 U.S. at 484.

**F.**   **Due Promise Claim Based on Fabrication of Evidence to Pursue Wrongful Prosecution is Akin to Malicious Prosecution**

Therefore, the accrual date of McDonough's due process claim is determined by the most analogous common law tort and its accrual rules.

Pursuant to *Wallace*, 549 U.S., a § 1983 wrongful detention claim is akin to false imprisonment if done before legal process (e.g. arrest) but akin to malicious prosecution if done by abuse of legal process (i.e. after arraignment or indictment).

See, *Mondragon*, 519 F.3d at 1082 (detention arising from wrongful legal process is akin to malicious prosecution).

Here, McDonough alleges he was deprived of due process and other rights because of the initiation and continuation of a wrongful prosecution based entirely on falsified testimony used at grand jury and trial.

In *Zahrey*, 221 F.3d at 349, this Court addressed many of the same principles as presented by a police fabrication of evidence fair trial claim and held that a prosecutor may be held liable for the deprivation of a defendant's liberty interests by using false evidence in a judicial proceeding that he/she fabricated in an investigatory capacity. The Court held that "the right at issue … is the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." However, this Court made it clear that a prosecutor's fabrication of evidence does not give rise to a claim unless it is used in a judicial proceeding that causes a deprivation of rights. 221 F.3d at 352. *Cf.*, *Ricciuti,* 124 F.3d at 127; *Douglas v. City of New York*, 595 F.Supp.2d 333, 346 (S.D.N.Y. 2009) ("The Second Circuit has permitted a claim under § 1983 for violation of the right to a fair trial to proceed even where no trial took place.")

The prosecutor in *Zahrey* claimed absolute immunity on the ground that plaintiff's "liberty interest was impaired by his *use of* the fabricated evidence, not by his alleged fabrication of it." 221 F.3d at 352. This Court rejected that assertion

39

by stating "it would be as artificial to focus only on the act of using the evidence, without regard to the consequences of such use, as it would be to focus on the earlier act of fabrication, without regard to the consequences of that act. … For example, in *Zahrey's* case, his liberty was not impaired until, after the evidence was both fabricated and used by introducing it in evidence before the grand jury, an indictment was later returned and *Zahrey* was later arrested. …" *Id.*

Thus, a prosecutor's investigatory fabrication of evidence gives rise to a due process claim only when it causes constitutional deprivations in a judicial process.

The Third Circuit Court of Appeals has also recognized that a prosecutor's trial use of fabricated evidence gives rise to distinct due process claim, minimally where there is a reasonable likelihood that the evidence could have affected the judgment of the jury. *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) (citing *Stemler v. City of Florence,* 126 F.3d 856, 872 (6th Cir. 1997) (same). See, also, *Bradford*, 803 F.3d at 388 (fabrication of evidence claim is analogous to a malicious prosecution for accrual purposes); *Doswell v. City of Pittsburgh*, No. 07-761, 2007 WL 2907886, at *2 (W.D. Pa. Oct. 2, 2007) (same).

Furthermore, "[t]he elements of malicious prosecution under section 1983 are 'substantially the same' as the elements under New York law; 'the analysis of the state and the federal claims is identical.' *Boyd v. City of New York,* 336 F.3d 72, 75 (2d Cir. 2003). To state a malicious prosecution claim under New York law,

40

the plaintiff must establish: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. *Manganiello*[, 612 F.3d at 161]. Under section 1983, the plaintiff must establish an additional element: a post-arraignment deprivation of liberty that rises to the level of a constitutional violation. *Boley v. Durets,* No. 12-cv-4090, 2013 WL 6562445, at *5 (E.D.N.Y. Dec. 10, 2013)." *Bailey*, 79 F. Supp. 3d at 448.

Therefore, McDonough's due process claim is inherently akin to a malicious prosecution. Smith's fabrication of evidence to wrongfully indict, prosecute and convict him involved nothing but an abuse of the judicial process.

McDonough also alleged that his due process liberty interest deprivations began upon indictment and continued throughout the prosecution until acquittal, including arrest, temporary detention, publicly reported "perp-walk," accusatory press conference in which it was essentially publicly stated that he was guilty of massive voter fraud, court ordered restricted travel, two trials over a period of sixteen weeks, extraordinary defense costs, deprivation of the right to a fair trial with the possibility of wrongful conviction and imprisonment as evidenced by a hung jury. E.g. ¶¶812, 815, 1172, 1184, 1196-1208, 1211, 1216

**G. McDonough's Fabrication of Evidence Claim Accrued on Acquittal and was Timely Commenced**

Consequently, McDonough's fabrication of evidence claim accrued upon his acquittal at retrial on December 21, 2012. In fact, other § 1983 due process and fair

trial claims not based on fabrication of evidence to pursue a wrongful prosecution but that nonetheless impugn the judicial process have been held to be analogous to malicious prosecution for accrual purposes. See, *Owens*, 767 F.3d at 392 (withholding of favorable evidence akin to malicious prosecution); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (due process claim that "essentially contests the fairness of a prosecution" is akin to malicious prosecution for accrual purposes).

In *Pierce*, 359 F.3d at 1284-85, the Tenth Circuit Court of Appeals decided the precise issue presented here. In that case, it was held that the fabrication of evidence by a police forensic witness leading to indictment and prosecution was a due process violation of the "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity" that "most closely resemble common law claims for malicious prosecution." The Court noted the judicial nature of the due process deprivations related to such fabrication of evidence claims as follows:

> "The initial seizure is governed by the Fourth Amendment [ ] but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause. *Compare* … *Castellano v. Fragozo,* 352 F.3d 939, 955 (5th Cir.2003) (en banc) (holding that the "manufacturing of evidence and the state's use of that evidence ... to obtain [defendant's] wrongful conviction indisputably denied him rights secured by the Due Process Clause"); *Newsome* [*v. McCabe,* 256 F.3d 747, 752 (7th Cir.2001)]  (holding that the Due Process Clause is the proper basis for challenging the use of manufactured evidence at trial). *Id*. at 1285-86

42

In *Bradford*, 803 F.3d at 384, 387-88, the Ninth Circuit similarly held that a fabrication of evidence claim is akin to malicious prosecution and accrues upon acquittal at retrial not reversal of conviction. In that case, the plaintiff asserted "a claim for deliberate fabrication of evidence, as recognized by [the Ninth Circuit] Court in *Devereaux* [263 F.3d at 1076]." The claim was asserted more than four years after plaintiff's conviction was reversed but less than three years after acquittal. The Court first noted the claim was not *Heck*-barred after the conviction was reversed because there was no longer an outstanding conviction. It also noted that "[a]s the Supreme Court made clear in its decision in *Wallace* [ ], *Heck* applies only when there is an extant conviction and is not implicated merely by the pendency of charges. *Wallace,* 549 U.S. at 392-94 [ ]. Consequently, the resolution of [the] appeal hinge[d] on traditional rules of accrual and not on the extension of *Heck* to retrial proceedings." *Bradford,* 803 F.3d at 386 (citations omitted).

However, in *Bradford*, 803 F.3d at 387-88, the Court then stated that although the due process violations began when the charges based on the fabricated evidence were filed, "[t]o determine the proper date of accrual, [courts] look to the common law tort most analogous to [plaintiff's] claim. As [that Court has] explained, the right at issue … is the right to 'be free from [criminal] charges' based on a claim of deliberately fabricated evidence. *Devereaux,* 263 F.3d at 1075. In this regard, it is similar to the tort of malicious prosecution, which involves the

43

right to be free from the use of legal process that is motivated by malice and unsupported by probable cause. *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066 (9th Cir.2004) (internal citations omitted)."

Lastly, noting that in *Owens*, 767 F.3d at 379, a *Brady*-based § 1983 claim was also analogized to a malicious prosecution for accrual purposes, the Ninth Circuit stated that "[s]etting the accrual date for [plaintiff's due process fabrication of evidence] claim as the date of acquittal is logical. If [his first] trial had resulted in an acquittal, his [ ] claim would have accrued on the date the charges against him were dismissed. *See Walker v. Jastremski,* 159 F.3d [at 119] (claim based on officers' conspiracy to fabricate evidence accrued when charges dismissed); *cf. Johnson v. Dossey,* 515 F.3d [at 781] (*Brady*-like § 1983 claim accrued on date of acquittal)." *Bradford,* 803 F.3d at 389.

In *Walker,* 159 F.3d at 119, a case decided before *Wallace*, this Court implicitly analogized plaintiff's fabrication of evidence claim to a common law malicious prosecution by holding it was timely if determined to have been commenced within three years from dismissal of underlying criminal charges.

In *Mondragon*, 519 F.3d, the Tenth Circuit Court of Appeals elucidated upon the accrual of due process fabrication of evidence and other constitutional

44

claims,[16] specifically with reference to the decisions of *Wallace*, 549 U.S., and *Pierce*, 359 F.3d. Therein, the plaintiff alleged that the defendant police officer forged an arrest warrant and illegally imprisoned him. *Mondragon*, 519 F.3d at 1080. The Court held that "after the institution of legal process, any remaining constitutional claim is analogous to a malicious prosecution claim" and accrued only upon favorable termination of the prosecution. *Id*. at 1083. "The period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment. That claim accrues when the plaintiff is released or legal process is instituted justifying that imprisonment. The period of time between the institution of that process and its favorable termination - through acquittal, habeas corpus, voluntary dismissal, etc. - forms a second claim, arising under the Due Process Clause. That claim accrues, at the earliest, when favorable termination occurs." *Id*.

Obviously, the *Mondragon* ruling and rational concerning accrual of claims applies equally to constitutional deprivations other than imprisonment, e.g. arrest and prosecution without probable cause (false arrest and malicious prosecution claims, including those based on fabrication of evidence).

---

[16] For example, as discussed, fair trial claims based on police fabrication of evidence to create probable cause for arrest or that would not necessarily impugn the entire process or a conviction because of an untainted basis for probable cause.

45

Last year, in *Nnodimele*, 2016 WL 3661273, at \*2-4, the District Court for the Eastern District of New York rejected the arguments that fair trial police fabrication of evidence claims not subject to the *Heck* accrual rule accrue but accrue when the information is forwarded to a prosecutor because favorable termination is not required and they may be asserted without regard to conviction. The Court held that if the claim would imply the invalidity of a conviction or sentence it does not accrue unless and until the underlying prosecution is favorably terminated, not when a conviction is reversed. *Id*. at \*3.

That District Court also noted that *Wallace* did not address such fair trial claims and its decision has not been extended to them. *Id*. at \*3-4. Specifically, the Court stated that "the holding in *Wallace* applies to Fourth Amendment claims that precede the institution of legal process; claims that follow are analogous to tort claims for malicious prosecution and therefore require a favorable termination. *Mondragon*, 519 F.3d at 1082-83. That logic comports with *Heck*, and it helps explain why the Ninth Circuit - in considering the accrual date of evidence fabrication claims - did not even consider the possibility that the plaintiff's claims accrued prior to vacatur of his conviction, instead focusing entirely on whether the operative date was that of vacatur or acquittal after retrial. *Bradford*, 803 F.3d at 386-89. [The Court] decline[d] to extend *Wallace* beyond its Fourth Amendment

46

context and [held] that plaintiff's fair trial evidence fabrication claims were timely

filed." *Nnodimele*, 2016 WL 3661273, at *4.

This year, in *Wright v. City of Philadelphia*, No. 16-cv-5020, 2017 WL

167970 (E.D. Penn. Jan. 17, 2017) it was similarly held that claims based on

fabrication of evidence and other trial related misconduct were analogous to

malicious prosecution and accrue upon acquittal, not reversal of a conviction.. The

Court summarized the analogy of fabrication of evidence claims to malicious

prosecution for accrual purposes, as follows:

> "In other words, malicious prosecution involves the trial process
> itself. [Plaintiff's] fabrication of evidence, withholding of evidence,
> and self-incrimination claims each involve the [ ] wrongful use of the
> trial process. A fabrication of evidence claim, which the Third Circuit
> Court of Appeals acknowledged as a tort distinct from malicious
> prosecution, results from the prosecution's *use at trial* of fabricated
> evidence. *See Halsey*[, 750 F.3d]; *see also Bradford*, 803 F.3d at 388
> (analogizing a fabrication of evidence claim to malicious prosecution
> for accrual purposes); *Doswell*[,] 2007 WL 2907886, at *2 (W.D. Pa.
> Oct. 2, 2007) (same). [Plaintiff's] withholding of evidence claim is
> similarly premised on the harm he suffered by not having access to
> exculpatory and impeachment evidence during his initial trial. *See
> Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004); *Simmons v.
> Beard*, 590 F.3d 223, 234 (3d Cir. 2009); *see also Owens*, 767 F.3d at
> 392 (analogizing withholding of evidence claim to malicious
> prosecution); *Johnson*[, 515 F.3d at 781–82] (*Brady* violation accrues
> upon termination of criminal proceedings in the § 1983 plaintiff's
> favor). Last, [plaintiff's] self-incrimination claim resulted from the
> prosecution's use *at trial* of his coerced confession. *Renda v. King*,
> 347 F.3d 550, 557–58 (3d Cir. 2003). Because each of these claims
> involved the trial process itself, they are most analogous to malicious
> prosecution. *Accord Brooks*[, 578 F.3d at 579] (finding that a § 1983
> due process claim that "essentially contests the fairness of [a

47

plaintiff's] prosecution" is similar to a malicious prosecution claim for accrual purposes)." *Wright*, 2017 WL 167970, at *6.

Again, "the *Wallace* Court held that to determine the date of accrual for a particular § 1983 claim, a court must look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine the date on which the limitations period for this most analogous tort claim would begin to run." *Owens,* 767 F.3d at 389 (internal citations omitted). "Malicious prosecution redresses injuries a plaintiff sustains as a result of a defendant's improper initiation or maintenance of formal proceedings against him." *Id.* at 390

Therefore, McDonough's due process claim based on the prosecutor's fabrication of evidence is most analogous to malicious prosecution and did not accrue until the proceedings were terminated favorably upon his acquittal at retrial.

The fact that the *Heck* applies only to claims that would impugn the validity of an outstanding conviction does not make its rationale irrelevant to the accrual of due process fabrication of evidence claims that do not result in a conviction. To the contrary, as discussed, *Heck* and *Wallace* instruct otherwise.

It is clear that any fabrication of evidence claim that would be *Heck*-barred by a conviction is inherently akin to a malicious prosecution claim and would not accrue unless the prosecution was favorably termination even if there is no conviction because it would necessarily impugn the integrity of the entire process. Such a claim would not accrue under common law unless there is a favorable

termination, regardless of whether there is a conviction. It is the nature of the claim that determines whether it impugns the integrity of the prosecution or conviction, not the occurrence of a conviction. *Heck* simply makes clear that an outstanding conviction precludes the bringing of a related malicious prosecution or analogous due process claim because it would imply its invalidity. That ruling comports with the common law requirement of favorable termination of any claim that would inherently impugn the integrity of the entire process during prosecution.

Stated differently, under federal accrual rules and common law principles discussed in *Heck* and expounded in *Wallace*, if a claim could not be brought upon a conviction because it would imply its invalidity, it could not be brought any time before favorable termination of the prosecution regardless of the outcome because it would also necessarily impugn the integrity of the entire process.

The same common law principles and public policy concerns against parallel civil and criminal litigation that might lead to disparate results and/or imply the invalidity of a pending criminal proceeding or related conviction, provide the foundation for the common law, state and federal requirement of a favorable termination before a malicious prosecution or analogous claim may be brought. See, also *Britt v. Legal Aid Society, Inc.*, 95 N.Y.2d 443, 447-48 (2000) (need for final termination of criminal proceedings and judicial policy against conflicting determinations from parallel litigation regarding the same transaction)

The rulings of *Heck* and *Wallace* are based on the same principles and concerns. *Wallace* merely reiterates that under the standard accrual rule federal claims like false arrest accrue at the time of the misconduct and injury because they would not necessarily impugn the integrity of the entire process or conviction.

Again, *Wallace* did nothing to fundamentally alter the *Heck* deferred accrual rule where a Fourth Amendment wrongful prosecution ends in conviction, i.e. *Heck* still bars § 1983 claims that would imply the invalidity of an underlying conviction or sentence. Furthermore, the *Wallace* holding that the *Heck* deferred accrual rule does not extend to Fourth Amendment false imprisonment and false arrest claims was expressly limited by the Supreme Court to those claims. *Wallace*, 549 U.S. at 387 n.1. The Supreme Court also clarified in *Wallace*, 549 U.S. at 393, that the *Heck* rule applies only when there is an outstanding conviction at the time a cause of action would have otherwise accrued.

## H. Due Process Wrongful Prosecution Is a Continuing Violation

Furthermore, McDonough's wrongful prosecution was a continual violation of his rights from the time of indictment until acquittal, which he could not stop. Therefore, like an unlawful imprisonment, it did not give rise to a complete and present claim until its termination. "The tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation. The essence of malicious prosecution is the perversion of proper legal procedures. Thus, it has been held that

50

some sort of prior judicial proceeding is the *sine qua non* of a cause of action in malicious prosecution." (internal citations omitted) *Broughton v. State of New York*, 37 N.Y.2d 451, 456-57 (1975).

"When a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases." *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974), vacated on other grounds, 422 U.S. 563 (1975) (holding that a false imprisonment analogous § 1983 claim does not accrue until release) The conduct cannot be considered to constitute a series of discrete acts giving rise to separate cause of actions. See, e.g. *Pollis v. New School for Social Research*, 132 F. 3d 115, 119 (2d Cir. 1997) (series of discrete discriminatory employment acts with no excuse to delay action until ended).

Therefore, for the reasons discussed, McDonough's malicious prosecution analogous fabrication of evidence due process claim did not accrue until acquittal.

## II. District Court Erred by Failing to Accept Allegations that Smith Did Not Have Absolute Immunity Because He was Unlawfully Appointed and Prosecuted McDonough for Acts Not Crimes Under State Law

In deciding defendant Smith's Fed. R. Civ. P. 12(b) (6) motion to dismiss the District Court was required "to assume all well-pleaded factual allegations to be true, determine whether they plausibly give rise to an entitlement to relief[,] … construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in [his] favor." *Selevan v.*

*New York Thruway Authority*, 584 F.3d 82, 88 (2nd Cir. 2009) (internal citations and quotations marks omitted). A District Court's consideration of such motion is generally "limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2nd Cir. 2006). "Thus, a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss." *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2nd Cir. 2000) (internal citation omitted). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2nd Cir. 1999) (citation and quotation marks omitted). District Courts "must be equally careful, however, not to permit a defendant to hijack the plaintiff's complaint and recharacterize its allegations so as to minimize [] liability." *Limone v. Condon*, 372 F.3d 39, 46 (1st Cir. 2004).

Here, as stated, the District Court failed to accept McDonough's allegations that Smith's appointment was unlawful because not done in compliance with strict state law. Instead, the District Court mischaracterized those allegations as a "claim" that it considered precluded from review because unsuccessfully litigated in state court. In any event, District Court stated that it would not consider those

52

"claims" and did not accept the allegations as true. The District Court also failed to accept allegations that Smith prosecuted him for alleged act that do not constitute the crimes charged as a matter of state law as true by simply ignoring the factual assertions and applicable state law which Smith failed to address or brief.

The District Court erred in failing to accept those allegations as true.

## **CONCLUSION**

For the reasons stated, the Order / Partial Final Judgment of the District Court should be reversed.

Dated:  March 23, 2017
      Albany, New York

Respectfully Submitted,
PREMO LAW FIRM PLLC
By ___s/Brian D. Premo___
Brian D. Premo
20 Corporate Woods Boulevard
Albany, New York 12211
Phone:     (518) 436-8000
Email:     *bpremo@premolaw.com*
*Attorney for Plaintiff-Appellant*

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements and Type-Style Requirements

1.  This brief complies with the type-volume limitations of Local Rule 32.1(a)(4)(A) and Fed. R. App. P. 32 because, excluding all materials permitted by Fed. R. App. P. 32(f), it contains 13,437 words as counted by the Microsoft Word processing system used to produce this brief.

2.  This brief complies with the typeface of Fed. R. App. P. 32(a)(5) and the typestyle requirements Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using a Microsoft Word processing system in 14 point, Times New Roman.

Dated: March 23, 2017                     PREMO LAW FIRM PLLC
                                          By __s/Brian D. Premo____
                                          Brian D. Premo
                                          20 Corporate Woods Boulevard
                                          Albany, New York 12211
                                          Phone:      (518) 436-8000
                                          Email:      *bpremo@premolaw.com*
                                          *Attorney for Plaintiff-Appellant*